ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 3 0 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| **ASSISTMED, INC.,** | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.:** |
| | § | **3:05-CV-0880-D** |
| **CONCEPTUAL HEALTH SOLUTIONS,** | § | |
| **INC., et al.,** | § | |
| | § | |
| Defendants/Counter-Plaintiffs. | § | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Respectfully submitted,

**JIM E. COWLES**
Texas Bar No. 04931000
**SIM ISRAELOFF**
Texas Bar No. 10435380
**DONALD B. COLLINS**
Texas Bar No. 04607650
**R. MICHAEL NORTHRUP**
Texas Bar No. 15103250

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2000
(214) 672-2331 (Fax)

**ATTORNEYS FOR PLAINTIFF,**
**ASSISTMED, INC.**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

I.    BACKGROUND FACTS ................................................................................................. 1

    A.    Parties contract to develop and market derivative software products ..................... 1

    B.    Disputes follow, and CHS declares AssistMed in default ........................................ 2

    C.    CHS recants the basis for declaring AssistMed in default ....................................... 2

II.   GROUNDS FOR SUMMARY JUDGMENT ...................................................................... 2

III.  MOTION FOR SUMMARY JUDGMENT STANDARD ...................................................... 3

IV.   ARGUMENT AND AUTHORITY ................................................................................... 3

    A.    CHS has not delivered the required SDSPs to AssistMed ....................................... 3

    B.    There is no termination of the contract for the reason asserted by CHS ................ 5

        1.    The contract specifies what events constitute "default" .............................. 5

        2.    CHS asserts a "default" based upon alleged delivery of an SDSP .............. 6

        3.    CHS admits that its asserted basis for default is false ................................ 6

    C.    CHS has violated the exclusive license clause of the agreement ............................. 7

    D.    CHS does not have a right to refuse to develop any SDSP ...................................... 9

    E.    CHS's and Florimbi's fraud claims and defenses are not valid
        as a matter of law ...................................................................................................... 10

        1.    Future market penetration and generation of future revenues .................... 11

        2.    Help to obtain funding ................................................................................. 12

        3.    One product, not two ................................................................................... 15

    F.    As a matter of law, CHS and Florimbi cannot recover attorney's
        fees in reliance upon the Texas Declaratory Judgment Act .................................... 17

V.    CONCLUSION AND PRAYER ...................................................................................... 17

# TABLE OF AUTHORITIES

**CASES:**

*Albritton v. Henry S. Miller Co.*,
608 S.W.2d 693 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) ............................................10

*Comacho v. Texas Workforce Comm'n*,
445 F.3d 407 (5th Cir. 2006) ............................................17

*Duperier v. Texas State Bank*,
28 S.W.3d 740 (Tex. App.—Corpus Christi 2000, pet. dism'd) ........................................11

*Ferguson v. Williams*,
670 S.W.2d 327 (Tex. App.—Austin 1984, writ ref'd n.r.e.) ............................................11

*In re FirstMerit Bank, N.A.*,
52 S.W.2d 749 (Tex. 2001) ............................................10

*Friedman v. Powell Elec. Mfg. Co.*,
456 S.W.2d 758 (Tex. Civ. App.—Houston [1st Dist.] 1970, no writ) ............................14

*Frost Nat'l Bank v. L&F Distribs., Ltd.*,
165 S.W.3d 310 (Tex. 2005) ............................................4

*Haase v. Glazner*,
62 S.W.3d 795 (Tex. 2001) ............................................10

*Hagar v. Texas Distrib., Inc.*,
560 S.W.2d 773 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) ......................................12

*Landscape Design*,
2002 U.S. Dist. LEXIS 2679 ............................................14

*Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*,
No. 3:00-CV-0906-D, 2002 U.S. Dist. LEXIS 2679 (N.D. Tex. Feb. 19, 2002) .............13

*Lee Lewis Constr., Inc. v. Harrison*,
70 S.W.3d 778 (Tex. 2001) ............................................3, 9

*Merchandise Mart, Inc. v. Marcus*,
483 S.W.2d 893 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.) ......................................12

*Paull v. Capital Resource Mgmt., Inc.*,
987 S.W.2d 214 (Tex. App.—Austin 1999, pet. denied) ............................................11

*Rosas v. United States Small Business Administration,*
    964 F.2d 351 (5th Cir. 1992) ........................................................................13

*Southland Sec. Corp. v. Inspire Ins. Solutions Inc.,*
    365 F.3d 353 (5th Cir. 2004) ................................................................15, 16

*Szabo v. Errisson,*
    68 F.3d 940 (5th Cir. 1995) ..........................................................................3

*Talley v. Howsley,*
    176 S.W.2d 158 (Tex. 1943)........................................................................14

*Tapia v. Chase Manhattan Bank, N.A.,*
    149 F.3d 404 (5th Cir. 1998) ........................................................................3

*Town North Nat'l Bank v. Broaddus,*
    569 S.W.2d 489 (Tex. 1978).......................................................................13

*Utica Lloyds v. Mitchell,*
    138 F.3d 208 (5th Cir. 1998) ......................................................................17

*Warner v. Venture Petroleum Corp.,*
    188 S.W.2d 596 (Tex. Civ. App.—San Antonio 1945, writ ref'd w.o.m.) ........................14

**STATUTES and RULES:**

Fed. R. Civ. P. 9(b) ..........................................................................................15

Fed. R. Civ. P. 56...............................................................................................1

Tex. Civ. Prac. & Rem. Code Ann. § 37.009 .........................................................17

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASSISTMED, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: |
| | § | 3:05-CV-0880-D |
| CONCEPTUAL HEALTH SOLUTIONS, INC., et al., | § | |
| | § | |
| | § | |
| Defendants/Counter-Plaintiffs. | § | |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT

Plaintiff AssistMed, Inc. files this Motion for Summary Judgment and Brief in Support in accordance with FED. R. CIV. P. 56.

## I.  BACKGROUND FACTS

**A.  Parties contract to develop and market derivative software products**

The dispute in this case arises in connection with a May 1, 2002 License Agreement between AssistMed, Inc. ("AssistMed" or "AM") and Conceptual Health Solutions, Inc. ("CHS"). (Appendix at 10-25.) CHS had previously obtained a Technology License Agreement with the Mayo Foundation for the development and distribution of a product known as the Mayo Vocabulary Processor ("MVP"). (Appendix at 10.) By their May 1, 2002 License Agreement, AssistMed and CHS contracted for the development and marketing of derivative software products using the MVP technology. The software products would be designed to process medical records and would file documents, generate billing codes and standardize terminology contained within the documents. (Appendix at 10-11, 22.)

**B.      Disputes follow, and CHS declares AssistMed in default**

Following May 1, 2002, disputes arose regarding the interpretation and execution of the contract, which suggested the need for declaratory relief to resolve those differences. However, by letters dated December 16, 2004 and December 28, 2004, CHS asserted that AssistMed was in default under the terms of the License Agreement. (Appendix at 27, 32.)  On December 27, 2004, AssistMed responded to the December 16, 2004 letter. (Appendix at 30.)  By letter dated December 28, 2004, CHS asserted that it was exercising a termination clause in the License Agreement on the alleged ground that CHS had provided AssistMed with one of the software products (CodeAccess) described in the contract, and that because AssistMed had not rejected the product within the time provided in the contract, AssistMed was deemed to have accepted it, thereby allegedly triggering a contractual requirement that AssistMed pay royalties to CHS. (Appendix at 32.)  CHS's position thereafter necessitated the filing of this suit.

**C.      CHS recants the basis for declaring AssistMed in default**

Subsequent to the filing of the present suit, CHS rescinded its contention that it had provided AssistMed with the software product, CodeAccess.   (Appendix at 44-45, 57.)  However, the parties' disagreement regarding the interpretation and execution of the License Agreement continue.  The intervention of the Court is necessary to resolve the parties' disputes.

## II.      GROUNDS FOR SUMMARY JUDGMENT

AssistMed seeks summary judgment on the following issues:

1.      CHS has not fulfilled its contractual obligation to develop and deliver any Specific Derivative Software Product ("SDSP")

2.      The License Agreement is not terminated

3.      CHS has violated the exclusive license clause of the License Agreement between the parties

4.      CHS does not have a right to refuse to develop any SDSP

5.      The alleged statements CHS and Florimbi assert as a basis for fraud will not support a claim for fraud

6.      The Texas Declaratory Judgment Act will not support CHS's and Florimbi's claim for recovery of attorney's fees

### III.    MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the evidence demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995). The Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party. *Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 408 (5th Cir. 1998). If the record taken as a whole cannot lead a rational trier of fact to find for the nonmovant, then there is no genuine issue for trial. *Szabo*, 68 F.3d at 942.

### IV.    ARGUMENT AND AUTHORITY

### A.    CHS has not delivered the required SDSPs to AssistMed

AssistMed is entitled to summary judgment with respect to its claim that CHS failed to deliver the information required by Section 3(e)(1) of the License Agreement before CHS attempted to terminate the License Agreement. This first ground for summary judgment involves the interpretation of the parties' contract. The interpretation of the terms of a contract is a question of law for the Court. *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 783 (Tex. 2001). Accordingly, this issue is proper for summary judgment.

The License Agreement between CHS and AssistMed sets out each of the steps the parties were to take toward reaching the goal of marketing derivative software products (SDSPs). The first step is contained in Section 3(e)(1) of the License Agreement, which provides:

> "Within forty-five days after CHS delivers the necessary
> information relative to SDSPs to AM, AM and CHS shall
> formulate product specifications for the SDSPs and AM shall

> formulate requirements for the SDSPs-AssistMed product interface
> and deliver all such information to CHS. In addition, during said
> period, AssistMed and CHS shall jointly develop acceptance
> testing procedures.

(Appendix at 12-13, § 3(e)(1).) At a minimum, Section 3(e)(1) must be construed so that the phrase "necessary information" includes delivery of the SDSPs.

In construing the contract, the Court must consider the terms of the contract as a whole. *Frost Nat'l Bank v. L&F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005). Construing the contract as a whole, requires that the Court construe "necessary information" to include the SDSPs. Certainly, Section 3(e)(1) refers to delivery of information "relative to SDSPs." (Appendix at 12-13, § 3(e)(1).) But more significantly, the next phase of the development set out in Section 3(e)(2) requires for alpha and beta testing to commence in accordance with Section 3(b). (*Id.* § 3(e)(2).) Section 3(b) calls for a period of alpha and beta testing of the SDSPs "once CHS delivers to AM each SDSP." (Appendix at 12, § 3(b).) AssistMed certainly could not perform alpha and beta testing of the SDSPs without delivery of the SDSPs. Accordingly, the Court should construe Section 3(e)(1) of the contract to include delivery of the SDSPs, and grant AssistMed summary judgment declaratory relief.

To the extent Section 3(e)(1) required CHS to deliver SDSPs to AssistMed, the evidence establishes as a matter of law, that CHS did not deliver any SDSP to AssistMed. CHS's CEO, Michael Florimbi testified that CHS never delivered the SDSP to AssistMed. (Appendix, at 44-45.) Accordingly, AssistMed is entitled to summary judgment declaring that Section 3(e)(1) of the License Agreement required CHS to deliver SDSPs to AssistMed, and that CHS never delivered any SDSP to AssistMed.

Without conceding that CHS provided *all* necessary information under Section 3(e)(1) of the contract, AssistMed also seeks summary judgment on the question of whether CHS gave

AssistMed 45 days to formulate product specifications and requirements for the product interface before CHS attempted to terminate the License Agreement. CHS's discovery responses establish that CHS's position is that "necessary information" included e-mail communications dated as late as early December of 2004. (Appendix at 82 [Int. resp.# 1], 88-98.) But on December 16, 2004, CHS advised AssistMed that CHS had decided AssistMed was in violation of the License Agreement, and on December 28, 2004, CHS declared the agreement terminated. (Appendix at 27, 32.) Because Section 3(e)(1) of the License Agreement gives a 45-day period for a joint formulation of product specifications and the product interface (Appendix at 12-13, § 3(e)(1)), no reasonable trier of fact could find on these facts that CHS afforded AssistMed with the 45 days called for by Section 3(e)(1) of the License Agreement before CHS attempted to terminate the agreement. Therefore, summary judgment is proper declaring that CHS's attempted contractual termination was premature.

**B.      There is no termination of the contract for the reason asserted by CHS**

    **1.      The contract specifies what events constitute "default"**

As a matter of law, CHS's stated written basis supporting its contention for terminating the contract is false, and, therefore, the contract is not terminated for those asserted reasons. Section 10 of the License Agreement spells out the "events of default" and provides as follows:

> AM shall have committed an event of default, and this Agreement and the license granted hereunder shall terminate, if any of the follow occur:
> (a) AM attempts to use, copy, license, or convey MVP or SDSP in any manner contrary to the terms of this Agreement or in derogation of CHS's proprietary rights in MVP.
> (b) AM fails or neglects to perform or observe any of its existing or future obligations under this Agreement, including, without limitation, the timely payment of any sums due CHS within ten (10) days after notice that payment is delinquent.

(Appendix at 16, § 10.)

In addition, Section 3(e) states that "[i]n the event AM fails to meet the scheduling requirements set forth in this Section 3(e) and/or meet the minimum annual royalty requirements set forth in 5(c) and on Exhibit "B," this Agreement shall terminate as to AM's exclusivity only and a non-exclusive license shall be granted to AM…" (Appendix at 13, § 3(e).) Section 3(e)(1) specifies that the triggering event for the scheduling requirements is CHS's delivery of "the necessary information relative to SDSPs to AM." (Appendix at 12-13, § 3(e)(1).)

### 2.    CHS asserts a "default" based upon alleged delivery of an SDSP

On December 16, 2004, and December 28, 2004, CHS sent correspondence to AssistMed, asserting that AssistMed was in default under the terms of the License Agreement, and attempting to terminate the License Agreement. (Appendix at 27, 32.) Specifically, CHS asserted that it "delivered to AssistMed a software program referred to a [sic] CodeAccess™," which CHS said is defined as a Specific Derivative Software Program ("SDSP"). (Appendix at 27.) The December 16, 2004 letter further asserts that AssistMed had 6 months from the date of the alleged delivery of CodeAccess™ to accept or reject the product. CHS's letter reasoned that because AssistMed did not reject the program, AssistMed should be deemed to have accepted the program, which CHS asserts triggered a requirement for payment of royalties. (Appendix at 27-28.) As a matter of law, CHS's premise for asserting a default (i.e., delivery of CodeAccess) is not correct, and, accordingly, AssistMed seeks summary judgment declaring that the contract is not terminated for the reasons set out in CHS's December 2004 letters.

### 3.    CHS admits that its asserted basis for default is false

Michael Florimbi testified at his deposition that the statement in the December 16, 2004 letter—that CHS delivered to AssistMed a software program referred to as "CodeAccess"—is not correct. (Appendix at 44-45; see also id. at 66.) Mr. Florimbi stated that he knew from the beginning that no SDSP had ever been delivered to AssistMed. (Appendix at 45.) Mr. Florimbi

also testified that his December statement that AssistMed had 6 months to evaluate the SDSP and accept it or reject it, also was not correct because CHS never delivered the SDSP to AssistMed.  (Appendix at 44-45.)  And, he testified that because of the lack of delivery of the SDSP, his December 2004 statements that AssistMed owed royalties to CHS, was incorrect. (Appendix at 45.)  Taking this undisputed evidence as a whole, no rational trier of fact could find that CHS's attempted termination was valid.  Therefore, AssistMed is entitled to summary judgment declaring that CHS's December 2004 attempt to terminate the License Agreement due to a purported default by AssistMed, was ineffective.

**C.      CHS has violated the exclusive license clause of the agreement**

AssistMed is entitled to summary judgment on the ground that CHS has violated the exclusive license clause of the License Agreement.  The License Agreement sets out three important definitions:

> "(a)    "Derivative Work" means a software programs [sic] or part thereof that are based in whole or in part upon MVP, and references only to Specific Derivative Software Programs (SDSP) defined in this License Agreement.

> (b)     "Specific Derivative Software Programs" (individually referred to as "SDSP" and collectively referred to as "SDSPs") means those Derivative Works that are to be developed by CHS and are currently known as FileAccess, CodeAccess and DischargeAccess including all related copyrights, trademarks, and/or patents and which are more particularly described in Exhibit "A," which is attached hereto and made a part hereof.

> * * *

> (e) "Field" means adaptation, incorporation and/or utilization of an SDSP into a system that utilizes dictation and/or transcription as the data input and routes the resulting text through the CHS Software (MVP) to file the documents, generate billing codes and standardized [sic] terminology contained in the document.  All other Fields are excluded from this Agreement."

(Appendix at 10-11.)  By Section 3(a) of the License Agreement, CHS gave AssistMed an exclusive license (or contingent future right to an exclusive license):

"(a)     CHS does hereby grant, transfer and convey to AM an exclusive license to use, reproduce, market, distribute, and bundle the SDSPs into AM's products in the Field only . . . subject to the terms and conditions set forth herein.  The grant set forth herein is made expressly subject to the terms of this Agreement and the specific schedule set forth in Section 3(e).  The grant of an exclusive license shall be for a period of (3) years.  The term of the grant shall independently commence for each of the SDSPs developed by CHS.  The commencement date for the exclusive grant for each of the SDSPs shall be the date AM accepts each of the SDSPs.

(Appendix at 12, § 3(a).)

The contract also specified that AssistMed's acceptance or rejection of an SDSP should occur within 6 months after the alpha and beta testing.  (Appendix at 12, § 3(b).)  If AssistMed rejected the SPSPs submitted, then the License Agreement stated that "AM shall not be entitled to utilize the SDSP in any manner and any licensing rights granted hereunder shall automatically terminate."  (*Id.*)

The evidence establishes that CHS's use of the MVP software in the software that CHS developed for Johns Hopkins violates CHS's agreement to make the MVP software available exclusively to AssistMed.  A comparison of the capabilities of the Johns Hopkins software with the derivative software CHS was to develop for AssistMed illustrates the problem:

| AssistMed/CHS contract | Johns Hopkins/CHS software |
|---|---|
| CodeAccess: uses MVP technology to generate billing codes based on medical concepts contained in transcribed notes.  Uses Evaluation and Management rules established by federal government (Appendix at 22.) | OptiCode: uses MVP technology to process medical digital data and give the data back to Johns Hopkins in coded format.  Uses Evaluation and Management coding and medical procedure coding so that Johns Hopkins can generate billing statements from the codes.  (Appendix 46-50.) |

Michael Florimbi testified that the software CHS developed for Johns Hopkins started with the core MVP technology and then built upon it.  (Appendix at 36-37, 41-42.)  He further testified that the Johns Hopkins software assigns billing codes to the medical records, and creates records according to specified parameters.  (Appendix at 46-50.)  As such, the Johns Hopkins

software falls within the "field" definition contained in AssistMed's License Agreement.  And, Section 3(a) of the License Agreement gives AssistMed an exclusive license to software in the "field."  (Appendix 12, § 3(a).)  Because no rational trier of fact could find that the Johns Hopkins product does not violate the exclusive license provision of AssistMed's License Agreement, AssistMed seeks summary judgment on the ground that the software CHS developed for Johns Hopkins violates the exclusive license CHS contracted to provide AssistMed.

**D.    CHS does not have a right to refuse to develop any SDSP**

As a matter of law, the contract encompassed three separate SDSPs.  CHS recited in its December 16, 2004 letter that it had elected not to develop two of the three SDSPs, FileAccess and DischargeAccess.[1]  (Appendix at 27.)  Subsequently, Rhonda Thomas Florimbi testified at her deposition that the contract only contemplates development of a single product.  (Appendix at 128.)  As a matter of law, the contract calls for the development of three separate SDPSs, and CHS has no contractual basis to elect or otherwise refuse to develop all three SDSPs.

Whether the contract requires CHS to develop three SDSPs is a question of law for the Court.  *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 783 (Tex. 2001).  At the outset of the License Agreement, the parties recited that "CHS intends to develop Specific Derivative Software Programs, as defined herein below…" (Appendix at 10.)  Section 2(a) further provides that "[u]pon the execution of this Agreement, CHS shall continue the development, at its sole cost and expenses [sic], of three (3) specific SDSPs which are herein described in Exhibit "A" and attached hereto and made a part hereof of this Agreement.  (Appendix at 11, § 2(a).) Consequently, as a matter of law, the express terms of the contract require that CHS develop all three SDSPs.

---

[1] There is no dispute that the contract required CHS to develop CodeAccess.

**E.      CHS's and Florimbi's fraud claims and defenses are not valid as a matter of law**

AssistMed seeks summary judgment against CHS's and Florimbi's fraud claims and defenses.   The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.   *In re FirstMerit Bank, N.A.*, 52 S.W.2d 749, 758 (Tex. 2001).   A fraudulent inducement claim involves the same elements, except that it also requires proof of the existence of a contract as part of its proof.   *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).   When raised defensively, as CHS and Florimbi have done here, fraud has the same elements of proof.   *Albritton v. Henry S. Miller Co.*, 608 S.W.2d 693, 695 (Tex. App.—Dallas 1980, writ ref'd n.r.e.).

CHS has identified 3 statements it contends are the basis of its fraud claim:

1.      Kivatinetz and AssistMed represented to CHS and Florimbi that AssistMed either had or would have "market penetration" in the medical transcription field with AssistMed's DictAide product in the United States of approximately 0.9% of the market in fiscal year 2002, and that such fiscal percentage would increase to 2.9% in 2003, 4.4% in 2004, 6.2% in 2005, and 7.9% in 2006.   Based upon the prior representation, AssistMed and Kivatentz represented to CHS and Florimbi that AssistMed was generating significant revenues from its DictAide transcription product and that CHS and AssistMed would together generate significant revenues by marketing derivative software products  to AssistMed's customer base.   *Defendants' Second Amended Counterclaim ¶ 9*; (Appendix at 38-48, 58.)

2.      Kivatinetz represented and promised to Florimbi that he and AssistMed would help Florimbi to obtain funding "for CHS" so long as Florimbi signed a license or similar agreement with AssistMed.   Kivatinez represented that he had many investor contacts and wealthy friends including AssistMed's current CEO Leonardo Berezovsky.    *Defendants' Second Amended Counterclaim ¶ 13*; (Appendix at 58.)

3.      AssistMed and Kivatinez represented that they wanted to market only one product but in the lawsuit they are claiming more than one product. (Appendix at 58.)

Whether a particular statement is actionable or not is a question of law for the court.  *See Duperier v. Texas State Bank,* 28 S.W.3d 740, 749 (Tex. App.—Corpus Christi 2000, pet. dism'd).  As discussed below, none of the statements CHS has identified will serve as the basis of a fraud claim.

### 1.     Future market penetration and generation of future revenues:

AssistMed is entitled to summary judgment against CHS's and Florimbi's claims of fraud based upon alleged representations of AssistMed's predicted future market penetration/market share.  The representations upon which CHS and Florimbi rely relate to forecasts or predictions of future business revenues.   (Appendix at 4-5.)   Texas law characterizes these types of representations as expressions of opinion, which are not actionable.  *See Duperier,* 28 S.W.3d at 749; *see, e.g., Paull v. Capital Resource Mgmt., Inc.,* 987 S.W.2d 214, 218-19 (Tex. App.—Austin 1999, pet. denied) (representation that venture could reasonably be expected to produce large revenues for long time is non-actionable statement of opinion).  For example, in *Ferguson v. Williams,* 670 S.W.2d 327, 331 (Tex. App.—Austin 1984, writ ref'd n.r.e.), Williams alleged that Ferguson falsely represented that (1) Williams would double his money within six to eight months, (2) he could make three or four times his investment during that period, (3) Ferguson could get financing for the project, and (4) Williams would not be required to incur any personal liability on any debts of the venture.  The court of appeals held that these representations are expressions of opinion, which will not constitute actionable fraud.  *Id.*  AssistMed's predictions of its future market penetration or market share are no different from those at issue in *Ferguson* (Appendix at 4-5); consequently, AssistMed's expression of opinion of future market share/penetration are not actionable fraud.

The representations in question are also not actionable for the reason that the representations relate to some future, predictive event.   (Appendix at 4-5.)   Actionable representations ordinarily relate to past or existing facts, and representations regarding future or contingent events are generally not deemed actionable fraud. *Hagar v. Texas Distrib., Inc.*, 560 S.W.2d 773, 774 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.); *Merchandise Mart, Inc. v. Marcus*, 483 S.W.2d 893, 897 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.).  The expression of opinion as to whether some future event will or will not happen cannot be made the basis for a fraud claim.  *Hagar*, 560 S.W.2d at 774.   Accordingly, the Court should grant summary judgment against this alleged fraudulent statement because no rational trier of fact could find in favor of CHS or Florimbi on this claim and defense.

AssistMed is also entitled to summary judgment against this claim because the representations were true representations of what they depicted—estimated forecasts.  (Appendix at 4-5.).  AssistMed is further entitled to summary judgment because AssistMed did not know (and could not know) that estimated figures in question were inaccurate or false.  (Appendix at 5.)  CHS has no evidence that the statements were false or that they were made with knowledge of falsity or with reckless disregard for the truth at the time the statements were made. (Appendix at 63, 64.)  Accordingly, no rational trier of fact could find in favor of CHS and Florimbi based upon this claim or defense.

### 2.     Help to obtain funding:

AssistMed is entitled to summary judgment against CHS's and Florimbi's fraud claim insofar as their claim is based upon the allegation that AssistMed represented that it had lots of investor contacts and would help CHS obtain funding.  The evidence upon which CHS and Florimbi would rely to prove this fraud claim is barred by the parol evidence rule.  The parol

evidence rule is a rule of substantive contract law, which bars the admissibility of evidence that seeks to vary, add to, or contradict the terms of a written contract.[2]  *Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*, No. 3:00-CV-0906-D, 2002 U.S. Dist. Lexis 2679, *26 (N.D. Tex. Feb. 19, 2002) (Fitzwater, J.).  A written instrument may not be varied by evidence of an oral agreement that contravenes its terms.  *Id.*  CHS and Florimbi's fraud allegations seek to vary, add to, or contradict the terms of the parties' License Agreement.

In the present case, CHS and Florimbi voluntarily signed a contract containing terms they knew are contrary to the representations upon which they now rely.  (*See* Appendix at 55-56.)  In particular, the contract allocates responsibilities for the costs and expenses between CHS and AssistMed.  Section 2(a) states that "CHS shall continue the development, at its sole costs and expenses, of three (3) specific SDSPs which are herein described in Exhibit 'A.'"  (Appendix at 11, § 2(a).)  CHS also agreed that it "shall at its own cost and expense perform concurrent Alpha and Beta testing of the SDSP products developed."  (Appendix at 11, § 2(b).)  AssistMed agreed to be "solely responsible for all costs and expenses incurred and/or associated with the development of the software interface specifications."  (Appendix at 11, § 2(b).)  Accordingly, the contract terms specified which party was responsible for what expenses.  (Appendix at 6.)

As a matter of law, CHS's and Florimbi's allegations that AssistMed promised to help obtain funding for CHS contradicts the express terms of the contract and is not evidence of fraud that will overcome the parol evidence rule.  *Town North Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 492 (Tex. 1978).  The Fifth Circuit Court of Appeals reasoned in *Rosas v. United States Small Business Administration*, 964 F.2d 351, 356 (5th Cir. 1992), that if fraud could be predicated on a party's allegation of any oral promise to vary the express terms of an agreement,

---

[2]  In this regard, the License Agreement purports to be a fully-integrated agreement. (Appendix at 19, § 17(a).)

then any collateral parol agreement might be asserted to contradict, vary or even abrogate any written contract. Following this rule of law, this Court concluded in *Landscape Design* that the parties could not introduce parol evidence contradicting the contract terms of a contract amendment so as to establish a claim for fraud. *Landscape Design,* 2002 U.S. Dist. Lexis 2679, at *30-31. Thus, CHS and Florimbi should not be permitted to vary the express terms of their contract with AssistMed by raising representations that conflict with the terms of the written agreement.

Even if CHS and AssistMed are permitted to rely upon parol evidence, and assuming without admitting that Mr. Kivatinetz made a promise to help obtain funding for CHS, the representation is not actionable fraud because it relates to a future promise. The mere failure to discharge a promise of something to be done in the future is not fraud. *Talley v. Howsley,* 176 S.W.2d 158, 160 (Tex. 1943); *Friedman v. Powell Elec. Mfg. Co.,* 456 S.W.2d 758, 763 (Tex. Civ. App.—Houston [1st Dist.] 1970, no writ); *Warner v. Venture Petroleum Corp.,* 188 S.W.2d 596, 597 (Tex. Civ. App.—San Antonio 1945, writ ref'd w.o.m.). The fact that there was no performance of the alleged prospective promise does not raise an issue of the lack of intention to perform. *Warner,* 188 S.W.2d at 598. To prevail in such a circumstance, there must also be a finding that at the time the promise was made, the promisor did not intend to perform. *Friedman,* 456 S.W.2d at 763. In *Friedman,* the jury found that the defendant represented that an earnest money contract would be assigned to the Plaintiff in the event Plaintiff was unable to secure necessary finance. *Id.* The court concluded that a finding of a failure to perform was immaterial in the absence of proof of an intent not to perform the contract. *Id.* To the extent that CHS or Florimbi can establish that such a representation was made, there is no proof that AssistMed or Kivatinez did not intend to perform the promise, or even that the time for

performance had arrived.  Consequently, no rational trier of fact could find in favor of CHS or Florimbi on this fraud claim and defense, making summary judgment proper.

### 3.     One product, not two:

AssistMed is entitled to summary judgment against CHS's and Florimbi's fraud claim based upon the allegation that AssistMed only wanted to market one product.  AssistMed is entitled to summary judgment against this claim because (1) CHS and Florimbi did not plead it as required by Rule 9(b); (2) the parol evidence rule precludes a fraud claim based upon this allegation since the allegation varies, adds to, or changes the terms of the written agreement; and (3) there is no evidence that CHS or Florimbi acted in reliance upon this alleged statement or that they suffered any damages as a result of such reliance.

Federal Rule of Civil Procedure 9(b) requires that averments of fraud and the circumstances constituting fraud must be stated with particularity.  FED. R. CIV. P. 9(b).  After AssistMed filed its Motion for More Definite Statement to require that CHS and Florimbi identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent, this Court ordered CHS and Florimbi to replead to set out these specifics.  *See Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).  CHS and Florimbi repleaded, but did not specify Rhonda Thomas Florimbi's deposition allegation of a misrepresentation regarding the number of products as a statement CHS and Florimbi deemed fraudulent.  *See Defendants' Second Amended Counterclaim.*  The Court should grant summary judgment against this fraud allegation because CHS and Florimbi failed to allege it in their amended pleading.  The purpose of Rule 9(b)'s heightened pleading standard is to give an opposing party fair notice of the plaintiffs' claims, protect opponents from harm to their goodwill, reduce the number of strike suits, and prevent the filing of baseless claims.

*Southland*, 365 F.3d at 363.   If a party is allowed to add to its list of alleged fraudulent statements after being ordered to specify by pleading the statements in question, then Rule 9(b) becomes meaningless and subject to gamesmanship.   Therefore, AssistMed respectfully requests that the Court grant AssistMed summary judgment against any assertion of fraud not contained in CHS's and Florimbi's live pleading, and particularly against the allegation that AssistMed allegedly only wanted to develop one product.

The Court should grant summary judgment against this alleged misrepresentation for the additional reason that the purported misrepresentation contradicts the written terms of the contract in violation of the parol evidence rule.   As discussed previously, allegations of fraud that contradict, vary, or add to the express terms of a contract are barred by the parol evidence rule. With respect to this allegation, the License Agreement refers to the development of three distinctly-named "Specific Derivative Software Programs" "known as FileAccess, CodeAccess and DischargeAccess."   (Appendix at 10; *see also id.* at 11, § 2(a) ["Upon the execution of this Agreement, CHS shall continue the development, at its sole cost and expenses, of three (3) specific SDSPs which are herein described in Exhibit "A" attached hereto and made a part hereof of this Agreement."].)   The contract further states that AssistMed "desires to market the Specific Derivative Software Programs and to sublicense to its End Users the Specific Derivative Software Programs for stand alone use and integration with AM's existing software applications."   (Appendix at 10.)   Accordingly, the express terms of the contract—which the Court may construe—contemplate more than one product; and, CHS and Florimbi are thereby barred from creating a fraud claim by contradicting the terms of the contract with evidence asserting a different agreement.

Finally, the Court should grant summary judgment against this stated basis for fraud because CHS and Florimbi have no evidence that they relied upon the purported misstatement to their detriment or that they suffered injury thereby.  Accordingly, the evidence will not support a fraud claim on the basis of this purported statement, and the Court should grant summary judgment as to this basis for fraud since no rational trier of fact could find in favor of CHS or Florimbi upon the record of evidence.

**F.     As a matter of law, CHS and Florimbi cannot recover attorney's fees in reliance upon the Texas Declaratory Judgment Act**

CHS and Florimbi plead that they are entitled to recover reasonable and necessary attorney's fee and costs pursuant to the Texas Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.  As a matter of law, CHS and Florimbi may not rely upon the Texas Declaratory Judgment Act to authorize attorney's fees.  The Fifth Circuit has concluded that the Texas Declaratory Judgment Act is procedural, not substantive, and a party may not rely upon that Act as a basis for recovery of attorney's fees.  *Comacho v. Texas Workforce Comm'n,* 445 F.3d 407, 409 (5th Cir. 2006); *Utica Lloyds v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). Accordingly, AssistMed is entitled to summary judgment against this pleaded ground for attorney's fees.

## V.     CONCLUSION AND PRAYER

AssistMed respectfully prays that the Court grant its Motion for Summary Judgment, in whole or in part, and render judgment in accordance with the relief requested for each ground asserted.  AssistMed requests such further and additional relief as the Court deems appropriate.

Respectfully submitted,

By: _____

**JIM E. COWLES**
Texas Bar No. 04931000
**SIM ISRAELOFF**
Texas Bar No. 10435380
**DONALD B. COLLINS**
Texas Bar No. 04607650
**R. MICHAEL NORTHRUP**
Texas Bar No. 15103250

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2000
(214) 672-2331 (Fax)

**ATTORNEYS FOR PLAINTIFF
ASSISTMED, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 30th day of June, 2006, a true and correct copy of the foregoing document was delivered via Certified Mail, Return Receipt Requested to the counsel of record listed below.

_____
R. Michael Northrup

John Volney, Esq.
LYNN TILLOTSON & PINKER, L.L.P.
750 North St. Paul Street, Suite 1400
Dallas, Texas 75201